**STATE of Tennessee, Appellee,**

v.

**Roy Roger GREENE, Appellant.**

Court of Criminal Appeals of Tennessee, at Knoxville.

Oct. 3, 1995.

Permission to Appeal Denied by Supreme Court April 1, 1996.

William H. Bell, Greeneville, for Appellant.

Charles W. Burson, Attorney General and Reporter, Darian B. Taylor, Assistant Attorney General, Nashville, C. Berkeley Bell, Jr., District Attorney General, Anthony E. Hagan, Asst. Dist. Attorney General, Greeneville, for Appellee.

## OPINION

SUMMERS, Judge.

The appellant, Roy Roger Greene, was convicted by a jury of driving under the influence of an intoxicant, third offense. Greene now appeals, presenting the following issues for our review: (1) whether the evidence adduced at trial was sufficient to support the jury's verdict; (2) whether the trial court properly admitted statements made by the appellant to police officers; (3) whether the trial court properly admitted the results of the appellant's blood alcohol test; and (4) whether the trial court properly allowed an officer to give his opinion as to the appel-

lant's blood alcohol level. Having thoroughly considered these issues, we find no error in the judgment of the trial court.

## THE EVIDENCE PRESENTED AT TRIAL

Witness Dale Johnson testified that he was driving on Midway Road in Greene County when a red car approached from behind and attempted to pass. As the other driver swerved, Mr. Johnson heard a crash. When Mr. Johnson looked back, he saw that the red car had flipped over. Catherine Wisecarver was driving behind the red car. She and her passenger Shirlene Harmon saw the red vehicle weaving and passing other cars. The red car accelerated toward Mr. Johnson's vehicle and, the instant before impact, swerved 180 degrees and flipped into a ditch.

Both Mr. Johnson and Ms. Wisecarver stopped in nearby driveways. Mr. Johnson ran to the wrecked vehicle and pulled the appellant out through the passenger window. There was no one else in the appellant's car. The appellant staggered across the road and attempted to climb an embankment. Officers Glea Waddle and Jeff Morgan of the Greene County Sheriff's Department arrived on the scene and found the appellant in the back yard of a trailer across the road from the overturned vehicle. The appellant had difficulty walking and had an odor of alcohol about him. Officer Waddle asked the appellant if he was the person driving the vehicle, and the appellant initially responded that he was. A few minutes later, the appellant stated that he was not the driver of the vehicle and that a "Milwaukee fellow" was the driver. Officer Waddle asked the appellant if the driver was "Old Milwaukee," and the appellant replied, "Yes, that's him."

The Officers then brought the appellant back to the scene of the accident and Officer Morgan administered field sobriety tests. The appellant performed poorly on the "finger counting" test, the "finger to nose" test, and the Horizontal Gaze Nystagmus test. The officers concluded that the appellant was intoxicated and Officer Waddle placed the appellant under arrest. Because the appellant was complaining of pain in his foot, Officer Waddle transported him to Laughlin Hospital for an examination. While there, the appellant signed an implied consent form to take a blood alcohol test. The appellant's blood alcohol level was .22 at the time the test was administered.

## SUFFICIENCY OF THE EVIDENCE

■ The appellant contends that the evidence is insufficient to establish that he was the driver of the vehicle. The appellant's son, Marcus Harrison, testified that he was driving the car at the time of the accident and that he escaped from the vehicle before anyone else arrived. Because Kathy Greene, his mother and the appellant's wife, had instructed him not to drive the car, he panicked and started running. He ran to the Blue Springs Market and called his mother. He met Darren Parks, a friend, and Parks gave him a ride back to the scene of the accident. Seeing the appellant in custody, Harrison and Parks left.

Kathy Greene testified that she did in fact receive a call from her son on the date in question. She also indicated that Marcus left home for about a week as a result of the accident. Darren Parks testified that he took Marcus Harrison back to the scene of the accident and dropped him off there.

Wade Pounders, the owner of the trailer across from the accident site and the appellant's former brother-in-law, testified that he saw two people in the red car immediately before the accident. While he did not witness the accident, immediately after the accident he saw someone running through the ditch. After the police had placed the appellant in custody, the driver of the car "reappeared" at the scene of the accident and then left.

■ Where an appellant challenges the sufficiency of the convicting evidence, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Duncan*, 698 S.W.2d 63 (Tenn.1985); T.R.A.P. 13(e). The weight and

credibility of the witnesses' testimony are matters entrusted exclusively to the jury as the triers of fact. *State v. Sheffield,* 676 S.W.2d 542 (Tenn.1984); *Byrge v. State,* 575 S.W.2d 292 (Tenn.Crim.App.1978). On appeal, we refuse to invade the province of the jury by reweighing the evidence or by substituting our own judgement as to the credibility of witnesses' testimony.

Here it is obvious that the jury credited the testimony of the state's disinterested witnesses and chose not to believe the appellant's witnesses. This issue is without merit; there is ample evidence in the record to support the jury's verdict.

## ADMISSION OF THE APPELLANT'S STATEMENTS

■ The appellant contends that his statement that he was the driver of the vehicle and his "Old Milwaukee" statement were obtained in violation of his *Miranda* rights and therefore should not have been admitted at trial. We addressed this issue in *Trail v. State,* 552 S.W.2d 757 (Tenn.Crim.App.1976). In *Trail,* we held:

> [A]n officer may, in the course of an investigation of an automobile accident, make inquiry of a person to determine if he had been operating a vehicle involved in a collision without giving the *Miranda* advice. Further, it is our opinion that the statement of a person in response to such a question, revealing that he was in fact the operator of a vehicle involved in an accident, is admissible and not a violation of the Fifth (5th) Amendment of the United States Constitution.

*Id.* at 758. We found that the *Miranda* warnings were not necessary in *Trail* even though the defendant had been removed from the scene of the accident and taken to a hospital for treatment. *Id.* Where, as here, the defendant is questioned at the scene of an accident, the inquiry is clearly investigatory rather than accusatory in nature. *See Braziel v. State,* 529 S.W.2d 501 (Tenn.Crim.App.1975).

■ The appellant contends that the rationale of *Trail* does not apply in this instance because he was in custody when the officers questioned him. In support of his position, the appellant relies heavily on Officer Waddle's testimony that he suspected that the appellant was the driver and that the appellant was therefore not free to leave. The question of whether a person has been seized, however, does not turn on the subjective impressions or intentions of the officer involved. Rather, the focus of the analysis is whether the circumstances are such that a reasonable person would believe that he is not free to ignore the inquiry or otherwise terminate the encounter. *Florida v. Bostick,* 501 U.S. 429, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991). There must be either a physical application of force by the officer or a submission to the officer's show of authority. *California v. Hodari D.,* 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991).

■ Here there is no indication that the circumstances were such as to indicate to the appellant that he was not free to refuse to answer the officer's questions or to simply walk away. The appellant was not under arrest or in custody when the Officer Waddle asked him if he was the driver of the vehicle. Officer Waddle was simply corroborating what the eyewitnesses to the accident had told him regarding the number of occupants in the wrecked vehicle and the identity of the driver. Later, when the appellant asserted that a "Milwaukee fellow" had been driving the vehicle, Officer Waddle asked the appellant if he was referring to Old Milwaukee. He was not interrogating the appellant. Rather, Officer Waddle testified that he said the first thing that popped into his mind. Although the appellant's affirmative answer was without a doubt incriminating, the appellant could have chosen to ignore Officer Waddle's sarcastic remark. The officers did not place the appellant under arrest until after he had performed poorly on a series of field sobriety tests. The statements made by the appellant were therefore not obtained in violation of his *Miranda* rights and were properly admitted at trial.

## ADMISSION OF THE RESULTS OF THE APPELLANT'S BLOOD TEST

■ The appellant maintains that the results of his blood test were improperly admitted at trial because to require a defen-

dant to submit to a blood test rather than a breath test constitutes an unreasonable search and seizure under both the Tennessee and United States constitutions. As the United States Supreme Court held in *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), the extraction of blood for alcohol testing is not constitutionally prohibited so long as the procedure is performed in a reasonable manner and there is some indication that the evidence sought will be found. *Id.* at 759–760, 771. Furthermore, the appellant was in a hospital for treatment and there is no evidence in the record that a less invasive testing procedure was available. Finally, the appellant signed an implied consent form; he did not indicate that he objected to taking a blood test rather than a breath test. This issue is without merit.

### OPINION TESTIMONY AS TO THE APPELLANT'S BLOOD ALCOHOL LEVEL

The appellant asserts that the trial court erred in permitting Officer Morgan to give his opinion as to the appellant's blood alcohol level based on the results of the Horizontal Gaze Nystagmus test. The appellant objected to this testimony at trial, but did not state a specific ground for the objection as required by Rule 103(a)(1) of the Tennessee Rules of Evidence. The issue was not preserved for our review. Nevertheless, Jerry Maine, a forensic chemist with the Tennessee Bureau of Investigation, testified that based on his testing of the appellant's blood sample, the appellant's blood alcohol concentration was .22. Any arguable error in allowing Officer Morgan's testimony was therefore harmless. T.R.A.P. 36(b); Tenn. R.Crim.P. 52(a).

### CONCLUSION

We find the issues presented by the appellant to be without merit. The judgment of the trial court is therefore

**AFFIRMED.**

HAYES and BARKER, JJ., concur.