IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs April 19, 2005

## STATE OF TENNESSEE v. LACEY JONES

**Appeal from the Criminal Court for Shelby County**
**No. 03-02148    Chris Craft, Judge**

---

**No. W2004-01628-CCA-R3-CD  - Filed August 4, 2005**

---

The defendant, Lacey Jones, was convicted of four counts of especially aggravated kidnapping, one count of aggravated burglary, and two counts of aggravated robbery. The trial court merged the aggravated robbery convictions into the convictions for especially aggravated kidnapping and ordered a concurrent sentence of thirty-five years for each of the four counts. The trial court ordered the aggravated burglary sentence of seven years to be served consecutively, for an effective sentence of forty-two years. In this appeal of right, the defendant argues that his convictions for especially aggravated kidnapping and aggravated robbery violate principles of due process; that the trial court erred by merging the aggravated robbery convictions into the especially aggravated kidnapping convictions; and that the trial court erred by ordering consecutive sentencing. The judgments of the trial court are affirmed.

**Tenn. R. App. P. 3; Judgments of the Trial Court Affirmed**

GARY R. WADE, P.J., delivered the opinion of the court, in which JOSEPH M. TIPTON and ALAN E. GLENN, JJ., joined.

Anthony Helm, Bartlett, Tennessee (on appeal), and Tim Williams, Memphis, Tennessee (at trial), for the appellant, Lacey Jones.

Paul G. Summers, Attorney General & Reporter; Richard H. Dunavant, Assistant Attorney General; and James Wax and Michelle Parks, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

The defendant's convictions are the result of a home invasion robbery at the residence of Anthony and Trina Boyce in Memphis. At approximately 3:30 a.m. on October 16, 2002, while Anthony Boyce was away on business, four masked men, who were armed with guns and wearing dark clothing, used a crowbar to break in the front door of the residence and announced that they were the police. Although Ms. Boyce had locked herself in her bedroom with two of her young

children, ages three and five, the intruders kicked in the bedroom door. When one of them shouted, "[B]\*\*ch, where's your husband . . . [w]e going to kill your . . . f\*\*king husband," Ms. Boyce recognized the voice as that of a co-defendant, Bobby Harris, who had grown up with her husband. After handcuffing Ms. Boyce and ordering her to lie on her bed, the men ransacked the house. One of the assailants, who remained in the bedroom, placed his hands inside Ms. Boyce's underwear and penetrated her vagina with his fingers. While downstairs, the intruders located and handcuffed two of Ms. Boyce's teenage sons and her adult brother. The third son, upon hearing the forced entry, had fled to a neighbor's residence and telephoned the police. When the police arrived, they found the defendant, who was dressed in black and had an injured ankle, lying in a neighbor's yard. He told the officers that he had been considering a purchase of the house next door when he was overtaken by the men running from the Boyce residence. The defendant was soaking wet. There were footprints leading from the lake behind the residence to where he was found by the police. Ms. Boyce's checkbook, driver's license, and billfold contents were on the ground some two feet away.

The defendant was tried jointly for the offenses with his co-defendants Larry Holmes and Bobby Harris. He was convicted as charged, as was Holmes, who received identical convictions. The jury acquitted Bobby Harris.

I

Initially, the defendant contends that his four convictions for especially aggravated kidnapping were incidental to the aggravated robbery offenses and are, therefore, violative of due process. The state argues otherwise.

In State v. Anthony, 817 S.W.2d 299, 305 (Tenn. 1991), our supreme court acknowledged that a period of confinement of the victim frequently accompanies such crimes as robbery and rape and established that whether a separate kidnapping conviction can be supported depends upon "whether the confinement, movement, or detention [was] essentially incidental to the accompanying felony." 817 S.W.2d at 305. In State v. Dixon, our high court clarified its ruling in Anthony:

> Anthony and its progeny, however, are not meant to provide the rapist a free kidnapping merely because he also committed rape. The Anthony decision should only prevent the injustice which would occur if a defendant could be convicted of kidnapping where the only restraint utilized was that necessary to complete the act of rape or robbery. Accordingly, any restraint in addition to that which is necessary to consummate rape or robbery may support a separate conviction for kidnapping.

957 S.W.2d 532, 534-35 (Tenn. 1997). Where the confinement is beyond that necessary for the accompanying felony, the next inquiry is whether it (1) prevented the victim from summoning help; (2) lessened the defendant's risk of detection; or (3) created a significant danger or increased the victim's risk of harm. Id. at 535.

In our view, the confinement of the victims was beyond that necessary for the commission of the aggravated robberies. The defendant and his accomplices were armed with handguns and used them to subdue the victims. They chose to further restrain the victims by handcuffing them behind their backs, requiring them to lie face-down. Ms. Boyce was the only robbery victim. The perpetrators, however, chose to confine all of the occupants of the residence. The two teenaged boys downstairs had slept through the break-in and, behind the closed door of their bedroom, were not an apparent threat to the defendant and his cohorts. Nonetheless, the boys were awakened, cuffed, and moved to the hallway with Ms. Boyce's brother. After learning that one of Ms. Boyce's children, the one who had fled to a neighbor's residence, was unaccounted for, the perpetrators were determined to find and confine him as well. This demonstrates a separate intent from robbery. That the police arrived and interrupted the crimes, preventing further physical harm to the victims, does not change the analysis. The handcuffing of the victims would have hindered their efforts to seek aid, increased their risk of harm, and lessened the defendant's risk of detection.

In support of his argument, the defendant specifically directs this court to State v. Coleman, 865 S.W.2d 455 (Tenn. 1993). In Coleman, the defendant forced the victim, a shoe store clerk, to empty the cash register at gunpoint. After his accomplice left with the money, the defendant directed the victim into a back room, where he ordered her to undress, raped her, and, before leaving, instructed her not to get up. 865 S.W.2d at 456-57. The defendant was convicted of armed robbery, aggravated rape, and aggravated kidnapping. Our high court, however, reversed the kidnapping conviction pursuant to Anthony.

In our view, the facts of Coleman are distinguishable from the facts in this case. In Coleman, the victim was not physically restrained and was directed to the back room of the store to facilitate the rape. After the assault, the defendant did not lock or otherwise block the door. In this case, however, each of the victims was handcuffed behind his or her back and forced to lie face-down, a position which rendered them defenseless and largely immobilized. Accordingly, the defendant is not entitled to relief on this issue.

II

Next, the defendant asserts that the trial court erred by merging his aggravated robbery convictions into his convictions for especially aggravated kidnapping. The state contends that although the merger was not necessary, it was proper and within the discretion of the trial court.

It is well-established that "[w]here commission of one crime necessarily involves commission of the second, the offense so involved is said to be merged in the offense of which it is a part. . . . [T]he doctrine of merger does not apply where the offenses are separate and distinct, but only where the identical criminal acts constitute both offenses." 21 Am. Jur. 2d Criminal Law § 21 (1998) (citations omitted); see also State v. Robertson, No. W1999-01872-CCA-R3-CD (Tenn. Crim. App., at Jackson, December 1, 2000). To determine the existence of separate offenses a court must consider the following factors:

(1) whether the episode or transaction constitutes a violation of two distinct statutory provisions;

(2) whether either of the offenses is a necessarily included offense of the other;

(3) whether each of the offenses requires proof of a different element;

(4) whether each requires proof of an additional fact which the other does not; and

(5) whether each protects different interests or remedies the same harm.

Greer v. State, 539 S.W.2d 855, 858 (Tenn. Crim. App. 1976) (citing State v. Black, 524 S.W.2d 913, 919-20 (Tenn. 1975)); see also State v. Davis, 613 S.W.2d 218, 220 (Tenn. 1981); State v. Roberts, 943 S.W.2d 403, 407 (Tenn. Crim. App. 1996).

At the sentencing hearing, the trial court stated as follows:

As far as the aggravated robbery and especially aggravated kidnapping, I do find the defense has a point in the problems with Anthony and Denton as far as the kidnappings being necessary to commit an aggravated robbery because the robbery was not of any particular person. They were all handcuffed and then the house was ransacked and things were taken. For instance, the bag and the coins were taken from the dresser. However, I don't think the solution is going to be to dismiss the kidnappings. I think the solution since they're A felonies is to dismiss or not sentence the defendant on the aggravated robbery. So I'm not going to sentence on the aggravated robbery. And because of the problems with Anthony and its ilk I'm just going to merge that in with the aggravated kidnappings . . . .

Initially, the two aggravated robbery convictions are for the taking of jewelry from Trina Boyce. The state merely charged the defendant with different theories of culpability. Accordingly, it would have been both necessary and appropriate for the trial court to have merged one conviction into the other. That having been said, the trial court did not, in our view, exceed its authority when it merged the defendant's aggravated robbery convictions into the convictions for especially aggravated kidnapping. As already determined, the dual convictions for aggravated robbery and especially aggravated kidnapping did not violate the principles of due process. Nevertheless, the trial court merged the convictions and declined to sentence the defendant separately for the aggravated robbery. With regard to merger, this court has previously stated that "'the trial court has the power to enter the appropriate judgment. This authority does not impinge upon or amend the verdict so long as the judgment does not subject the defendant to a conviction and sentence which exceeds the jury's determination of culpability.'" State v. Price, 46 S.W.3d 785, 825 (Tenn. Crim. App. 2000) (quoting State v. Hill, 856 S.W.2d 155, 157 (Tenn. Crim. App.1993)). Had the trial court not merged the offenses, the defendant would have been exposed to an additional consecutive sentence. Thus, any error inured to the benefit of the defendant and does not give rise to relief.

III

Finally, the defendant contends that the trial court erred by ordering consecutive sentencing. The state argues that consecutive sentencing was appropriate because the defendant is a dangerous offender and because he has an extensive record of criminal activity.

When there is a challenge to the length, range, or manner of service of a sentence, it is the duty of this court to conduct a de novo review with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991); see State v. Jones, 883 S.W.2d 597, 600 (Tenn. 1994). "If the trial court applies inappropriate factors or otherwise fails to follow the 1989 Sentencing Act, the presumption of correctness falls." State v. Shelton, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992). The Sentencing Commission Comments provide that the burden is on the defendant to show the impropriety of the sentence. Tenn. Code Ann. § 40-35-401, Sentencing Commission Comments.

Our review requires an analysis of (1) the evidence, if any, received at the trial and sentencing hearing; (2) the presentence report; (3) the principles of sentencing and the arguments of counsel relative to sentencing alternatives; (4) the nature and characteristics of the offense; (5) any mitigating or enhancing factors; (6) any statements made by the defendant in his own behalf; and (7) the defendant's potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, -210; State v. Smith, 735 S.W.2d 859, 863 (Tenn. Crim. App. 1987).

Prior to the enactment of the Criminal Sentencing Reform Act of 1989, the limited classifications for the imposition of consecutive sentences were set out in Gray v. State, 538 S.W.2d 391, 393 (Tenn. 1976). In that case our supreme court ruled that aggravating circumstances must be present before placement in any one of the classifications. Later, in State v. Taylor, 739 S.W.2d 227 (Tenn. 1987), the court established an additional category for those defendants convicted of two or more statutory offenses involving sexual abuse of minors. There were, however, additional words of caution:

> [C]onsecutive sentences should not routinely be imposed . . . and . . . the aggregate maximum of consecutive terms must be reasonably related to the severity of the offenses involved.

Taylor, 739 S.W.2d at 230. The Sentencing Commission Comments adopted the cautionary language. Tenn. Code Ann. § 40-35-115. The 1989 Act is, in essence, the codification of the holdings in Gray and Taylor; consecutive sentences may be imposed in the discretion of the trial court only upon a determination that one or more of the following criteria[1] exist:

---

[1] The first four criteria are found in Gray. A fifth category in Gray, based on a specific number of prior felony convictions, may enhance the sentence range but is no longer a listed criterion. See Tenn. Code Ann. § 40-35-115, Sentencing Commission Comments.

(1)  The defendant is a professional criminal who has knowingly devoted himself to criminal acts as a major source of livelihood;

(2)  The defendant is an offender whose record of criminal activity is extensive;

(3)  The defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;

(4)  The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;

(5)  The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;

(6)  The defendant is sentenced for an offense committed while on probation;

(7)  The defendant is sentenced for criminal contempt.

Tenn. Code Ann. § 40-35-115(b).

The length of the sentence, when consecutive in nature, must be "justly deserved in relation to the seriousness of the offense," Tenn. Code Ann. § 40-35-102(1), and "no greater than that deserved" under the circumstances, Tenn. Code Ann. § 40-35-103(2); State v. Lane, 3 S.W.3d 456 (Tenn. 1999).

In Gray, our supreme court ruled that before consecutive sentencing could be imposed upon the dangerous offender, considered the most subjective of the classifications and the most difficult to apply, other conditions must be present:  (a) that the crimes involved aggravating circumstances; (b) that consecutive sentences are a necessary means to protect the public from the defendant; and (c) that the term reasonably relates to the severity of the offenses. In State v. Wilkerson, 905 S.W.2d 933, 938 (Tenn. 1995), our high court reaffirmed those principles, holding that consecutive sentences cannot be required of the dangerous offender "unless the terms reasonably relate[] to the severity of the offenses committed and are necessary in order to protect the public (society) from further criminal acts by those persons who resort to aggravated criminal conduct."  The Wilkerson decision, which modified somewhat the strict factual guidelines for consecutive sentencing adopted in State v. Woods, 814 S.W.2d 378, 380 (Tenn. Crim. App. 1991), described sentencing as a "human process

that neither can nor should be reduced to a set of fixed and mechanical rules."  Wilkerson, 905 S.W.2d at 938.

As to the consecutive service, the trial court ruled as follows:

And I also find [the defendant], because of his prior convictions and because of the nature of these offenses, a dangerous offender.  I find that the circumstances . . . surrounding the commission of this offense are aggravated.  He had little or no regard for human life, no hesitation about committing crime in which the risk to human life was high in descending upon this house with two other armed men with masks, all those children being handcuffed in separate rooms.  I think confinement for an extended period of time is necessary to protect society from this violent man whose unwillingness to lead a productive life and his resort to criminal activity in furtherance of an antisocietal lifestyle from the presentence report and the aggregate length of the sentence, which would be basically 42 years.  35 years at 35 percent and 7 years at 35 percent reasonably relates to the offense of which he stands convicted.

In our view, the trial court properly ordered consecutive service on the grounds that the defendant is a dangerous offender.  The trial court appropriately made all of the required findings and they are supported by the record.  Furthermore, consecutive sentences were warranted by the defendant's extensive record of criminal activity.  His record includes a conviction for voluntary manslaughter in Illinois in 1990, as well as two prior convictions for aggravated robbery in Tennessee in 1991 and 1992, each of which resulted in a twelve-year sentence.  Other convictions include two "weapons offenses."  Thus, the forty-two-year effective sentence was warranted.

Accordingly, the judgments are affirmed.

_____

GARY R. WADE, PRESIDING JUDGE

-7-