# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Remanded by the Supreme Court August 21, 2013

## STATE OF TENNESSEE v. RICCO R. WILLIAMS

**Appeal from the Circuit Court for Lauderdale County**
**No. 8856     Joseph H. Walker, III, Judge**

_____

**No. W2011-02365-CCA-RM-CD  - Filed January 7, 2014**

_____

JAMES CURWOOD WITT, JR., J., concurring and dissenting.

I respectfully write separately to express departure from the majority with respect to the absence of the *White* instruction in the especially aggravated kidnapping convictions wherein M.R., K.R., and A.R. were respectively named victims. I emphasize that I do not disagree with the logic underlying the majority's conclusion that due process principles do not impact these three convictions, the victims of which were not also named victims in accompanying felonies. Rather, I disagree with the implication emanating from *Anthony* that due process principles constrict the use of kidnapping convictions against victims even though those victims were not victims in any accompanying felony. This vestige of the *Anthony* regime should be specifically overruled, but I view that as a responsibility of our supreme court.

Before plunging into the rabbit warren of due process issues, I point out that the due process issue was not raised by either party in this appeal. Therefore, the *White*-trial error that I perceive ultimately must be analyzed for the presence of plain error. *See* Tenn. R. App. P. 13(b).

Prior to *State v. White*, 362 S.W.3d 559 (Tenn. 2012), our supreme court adjudicated cases which featured such supernumerary kidnapping victims. In *State v. Anthony*, 817 S.W.2d 259 (Tenn. 1991), the case that started the due process imbroglio that *White* attempted to resolve, the defendant was convicted of offenses that he committed during the robbery of a Shoney's Restaurant in Knoxville. Specifically, he was convicted of the armed robbery of Al Kesterson, the restaurant manager, and of the aggravated kidnappings of Mr. Kesterson and five other restaurant employees whom the defendant and

his accomplice had encountered and detained during the episode. *Anthony*, 817 S.W.2d at 301. After formulating the concept of due process that governs convictions of kidnapping and an accompanying felony, the *Anthony* court then applied the concept to *all* convictions of aggravated kidnapping, despite that only Mr. Kesterson was the victim of the *single* armed robbery.

In *State v. Richardson*, 251 S.W.3d 438 (Tenn. 2008), the defendant pleaded guilty to a *single* offense of attempted especially aggravated robbery; yet, the supreme court, after analyzing the due process issue, affirmed convictions of especially aggravated kidnapping as they related to two kidnapping victims who were employees of a restaurant.

In neither *Anthony* nor *Richardson* did the supreme court specifically address the existence of kidnapping victims who were not the victims of the accompanying felony of robbery. Nevertheless, the global application of due process principles in those cases informs us that, during the reign of *Anthony* and its progeny, the due process bar to prosecuting the kidnapping charge did not depend upon the kidnapping victim's being a victim of the accompanying felony. That said, *White* overruled *Anthony* and signaled a new remedy or methodology for applying due process principles when a kidnapping charge is combined with an accompanying felony; however, *Anthony* appears to remain vital to the extent that it validates the use of due process principles to scrutinize kidnapping convictions aligned with overlapping felonies. I have reviewed *White* to gain insight into the issue at hand, but other than the "standing alone" language, I find little. *White* informs me that, "[a]t the conclusion of the proof, the jury returned verdicts of guilt[y] for burglary, aggravated robbery, and especially aggravated kidnapping." *White*, 362 S.W.3d at 564. Although the opinion does not expressly say, I infer that White received single convictions of each of these offenses. The court implied that a single victim, Ms. Wright, was the victim of both the aggravated robbery and the especially aggravated kidnapping. *See id.* I have reviewed the jury instruction promulgated in *White* for a clue about whether the kidnapping victim must be a victim of the accompanying felony for the due process rule to apply, but I really discern nothing informative on this point. Although I believe that the thrust of *White* and *State v. Terrance Antonio Cecil,* 409 S.W.3d 599 (Tenn. 2013), is to diminish the ambit of due process concerns relative to kidnapping (or false imprisonment) convictions, I see nothing other than the highlight of the "standing alone" language that has changed the rule so as to require as a function of due process principles that the kidnapping victim be also a victim of the accompanying felony. In other words, the *Anthony* rule regarding supernumerary victims appears to be a function of the due process principle at work and not a question of remedy or methodology. If so, it is still viable and should be applied. In that event, all of the victims of the especially aggravated kidnappings in the present case are similarly situated for purposes of the threshold application of the due process analysis of *White*.

From this point, however, the task at hand becomes more complex: These five kidnapping convictions are juxtaposed against not one but two accompanying aggravated robbery charges. Two of the kidnapping victims were victims of the aggravated robberies. Furthermore, the aggravated robbery of Ms. Currie was modified to aggravated assault by this court on appeal.

I begin by determining that the due process issue was fairly raised concerning all kidnapping victims *vis a vis* both aggravated robberies. *See Poe v. State*, 370 S.W.2d 488, 489 (1963) (indicating that, generally, a trial court is obliged to instruct the jury on the rules of law that apply to the issues at trial); *State v. Williams*, 914 S.W.2d 940, 949 (Tenn. Crim. App.1995) (indicating that the duty of the trial court to charge the jury arises when an issue is fairly raised by the evidence and that no duty to charge on that issue arises when the evidence fails to fairly raise it). The five victims were moved and detained in facilitation of the robberies. Thus, the facts, as outlined above, required the trial court to impart the *White* jury instruction. *See State v. Bennie Osby*, No. W2012-00408-CCA-R3-CD (Tenn. Crim. App., Jackson, Nov. 2, 2012), *perm. app. denied* (Tenn. 2013).

Given that the kidnapping convictions overlap with the charged aggravated robberies of Mr. Currie and Ms. Currie, it becomes inconsequential to the analysis that some, if not all, of the kidnapping convictions do not overlap the ultimate conviction of the aggravated assault of Mr. Currie. The kidnappings of Mr. Currie, M.R., K.R., and A.R., at least, do not seem to be in furtherance of, or incidental to, the similarly perpetrated assault of Ms. Currie. (Neither is the kidnapping of Ms. Currie in furtherance of her assault if we view the assault as occurring and ending at the inception.) As to at least these four kidnapping victims, the *White* instructional issue is probably not fairly raised, but it matters not because I have already found that all five kidnapping convictions are infirm because of the juxtaposition of Mr. Currie's aggravated robbery. This infirmity, if harmful and plain, leads to reversal of the *kidnapping* convictions and *not the accompanying convictions* pursuant to existing case law. *See State v. Taylor*, 63 S.W.3d 400, 410 (Tenn. Crim. App. 2001) ("In cases decided under *Anthony*, the kidnapping conviction, when involved, is the conviction that has been dismissed.") (citing *State v. Carson*, 950 S.W.2d 951, 953 n. 3 (Tenn. 1997); *State v. Denton*, 938 S.W.2d 373, 378 (Tenn. 1996); *State v. Coleman*, 865 S.W.2d 455, 457 (Tenn. 1993); *State v. Binion*, 947 S.W.2d 867, 872-73 (Tenn. Crim. App. 1996); *State v. Gregory*, 862 S.W.2d 574, 579 (Tenn. Crim. App. 1993)). Were the rule otherwise, as I believe it should be, only the single aggravated robbery conviction would need to be reversed and that charge remanded for a new trial. Because, however, our courts have determined that the due process infirmity affects the *kidnapping* conviction, the kidnapping convictions in the present case are affected, or fouled, by the accompaniment of the aggravated robbery of Mr. Currie alone. Parenthetically, I interject here that I see no reason why the kidnapping conviction, as opposed to the overlapping conviction, must be the

casualty of a due process reversal, so long as the evidence is sufficient to support the kidnapping conviction.

So, because (1) *White* applies to the present case, (2) the *White* jury instruction issue was fairly raised with respect to the charges of aggravated robbery, and (3) the trial court did not impart the instruction, the trial court erred. *See Bennie Osby*, slip op. at 12.

Whether the error in this case is reversible depends upon the application of the harmless error rule. A *White* error is constitutional error subject to harmless error analysis. *Terrance Antonio Cecil*, ___ S.W.3d at ___, slip op. at 13. As such, no reversal results from the error when the same is harmless beyond a reasonable doubt. *Id.*; *see State v. Rodriguez*, 254 S.W.3d 361, 371 (Tenn. 2008). The harmless error examination asks "'whether it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'" *Terrance Antonio Cecil*, ___ S.W.3d at ___, slip op. at 13 (quoting *Rodriguez*, 254 S.W.3d at 371). The specific "touchstone" of this inquiry relative to *White* error is "whether a rational trier of fact could interpret the proof at trial in different ways." *Terrance Antonio Cecil*, ___ S.W.3d at ___, slip op. at 13 (citing *White*, 362 S.W.3d at 579). Per *White*, the "key element–the substantial interference with the victim's liberty–[requires] a finding by the jury that the victim's removal or confinement was not essentially incidental to the accompanying felony offense." *White*, 362 S.W.3d at 580.

As to the five kidnappings *vis-a-vis* the aggravated robberies, the five kidnapping victims were detained at gunpoint during the time the intruders ransacked the house looking for items to steal. Essentially, the kidnappings and the robberies were not separated meaningfully by time. Because of the arrival of the police, the kidnappings were not prolonged beyond the robbery-in-progress. Other than an injury to Mr. Currie, the intruders inflicted no injuries upon the victims. Although the arrival of the police may have prevented the intruders from binding the victims with duct tape, the victims were not bound, and I see this fact as significant. Also, one victim was able to contact the police. These circumstances suggest that a rational jury could interpret the evidence in different ways. As to whether the detention or confinement of the victims was essentially incidental to the charged robberies and not significant enough to stand alone, this error was not harmless.

Plain error analysis encompasses consideration of the following factors:

"(a) the record must clearly establish what occurred in the trial court;

(b) a clear and unequivocal rule of law must have been breached;

-4-

(c) a substantial right of the accused must have been adversely affected;

(d) the accused did not waive the issue for tactical reasons; and

(e) consideration of the error is 'necessary to do substantial justice.'"

*State v. Smith*, 24 S.W.3d 274, 282 (Tenn. 2000) (quoting *State v. Adkisson*, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994)).  All five factors must be established before this court will recognize an error as plain.  *Smith*, 24 S.W.3d at 283.  "An error would have to [be] especially egregious in nature, striking at the very heart of the fairness of the judicial proceeding, to rise to the level of plain error."  *State v. Page*, 184 S.W.3d 223, 231 (Tenn. 2006).

Accordingly, in the present case, the elements of noticing plain error point to the presence of such error.  The record in this case establishes the facts as described above and shows that the *White* instruction was not given.  Although plain error review requires that "a clear and unequivocal rule of law must have been breached," and although the *White* instruction was unknown and unforeseen at the time of the defendant's trial, our supreme court has told us (1) clearly and unequivocally how the jury should be instructed and (2) that the requirement of imparting the instruction applies to a case such as the defendant's.  Additionally, the rule is one of constitutional dimension, implicating a substantial right of the defendant that was adversely affected.  I see no indication that the accused waived the issue for tactical reasons.  Given that the guarantee of due process is at the heart of the jury instruction devised in *White*, I believe that "consideration of the error is 'necessary to do substantial justice.'"  *See Smith*, 24 S.W.3d at 282.

For these reasons, I would reverse the especially aggravated kidnapping convictions in counts one through five and remand those counts to the trial court for a new trial.  As noted above, this determination is driven by the case law that mandates that when a due process violation is adjudicated, the remedy is to reverse the kidnapping conviction (or convictions) and not the conviction of the accompanying felony.[1]

---

[1]In *White*, our supreme court ordered the case remanded to the trial court for "a new trial with the appropriate instructions *as to the especially aggravated kidnapping charge*."  *White*, 362 S.W.3d at 581 (emphasis added).

I trust – or at least hope – that the travail manifest in the foregoing pages shows that more must be done to tame the due process beast unleashed by *Anthony*.  I support (1) taking supernumerary victims out of the due process rule and (2) the appellate courts' having the option to reverse the accompanying felony when a due process error is found.

_____

JAMES CURWOOD WITT, JR., JUDGE